[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15096
Non-Argument Calendar

_____

D.C. Docket No. 3:18-cv-00051-DHB-BKE

GLADYS CHEGE,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF JUVENILE JUSTICE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 19, 2019)

Before MARTIN, NEWSOM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Gladys Chege, through her appellate lawyer, appeals the district court's denial of Plaintiff's pro se motion to vacate the district court's dismissal of Plaintiff's civil action against her former employer, the Georgia Department of Juvenile Justice ("Department"). Reversible error has been shown; we vacate the denial of Plaintiff's motion to vacate and remand for further proceedings.

In June 2017, Plaintiff filed in state court a civil action against the Department. Plaintiff asserted claims for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and claims under 42 U.S.C. § 1983 and state tort law. The Department removed the case to federal district court and moved to dismiss the complaint.

On 20 September 2017, the district court ordered Plaintiff to respond to the Department's motion to dismiss on or before 13 October 2017. The district court also noted that Plaintiff's then-lawyer (T) had not yet filed his appearance in the case.

On 26 October 2017 -- three months after removal and sometime after the deadline for responding to the Department's motion to dismiss had expired -- T applied for pro hac vice admission in the district court. The district court granted

2

the application and extended sua sponte the deadline for responding to the Department's motion.  The district court said expressly that failure to respond would result in dismissal of the case.  Plaintiff still filed no response to the Department's motion.  The district court deemed the motion unopposed and dismissed the case in November 2017.

About six months later, in May 2018, Plaintiff (represented by T) filed a "renewed" complaint against the Department in state court: a complaint nearly identical to the complaint filed in Plaintiff's first civil action.  Once again, the Department removed the case to federal district court and moved to dismiss the complaint.

On 17 August 2018, the district court dismissed Plaintiff's second civil action for want of prosecution and for failure to comply with court orders.  The district court explained that T had failed to comply with the court's instructions to enter a notice of appearance or to file for pro hac vice admission within ten days.  Plaintiff had also failed to respond to the Department's motion to dismiss.

Over a month later, on 24 September 2018, Plaintiff filed pro se a motion to vacate the district court's 17 August order of dismissal of her second action.  Plaintiff said that she was proceeding pro se because T had not yet been able to secure a sponsor for his pro hac vice application.  Plaintiff also explained that T's

ability to practice law and to comply with court-imposed deadlines had been impaired by T's ongoing divorce proceedings and resulting financial difficulties. Plaintiff contended that -- whether or not T's personal circumstances constituted "excusable neglect" or possibly "legal malpractice" -- "it would be patently unjust for Plaintiff to suffer as a result of her attorney's negligence." Plaintiff also asserted that the Department would not be prejudiced by the court's granting of Plaintiff's motion.

The district court denied Plaintiff's motion. The district court concluded that Plaintiff had failed to demonstrate excusable neglect that would justify relief under Fed. R. Civ. P. 60(b). The district court explained that T's personal circumstances were no excuse for his failure to meet filing deadlines:

> Plaintiff has not demonstrated excusable neglect that justifies relief from the Court's dismissal Order. Mr. [T]'s personal circumstances do not excuse his failure to meet filing deadlines in this case. This was Plaintiff's second opportunity in this Court on the same case. Once again, Mr. [T]'s omissions got the case dismissed. Plaintiff's failure to respond to Defendant's motion to dismiss and to timely file for pro hac vice admission is, in a word, inexcusable.

"Rule 60(b) motions are directed to the sound discretion of the district court, and we will set aside the denial of relief from such motion only for abuse of that discretion." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1355 (11th Cir. 2009). The scope of our review on appeal is limited to

4

addressing "the propriety of the denial or grant of relief" under Rule 60(b): we will not consider the underlying judgment.  Am. Bankers Ins. Co. of Fla. v. Nw. Nat. Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999).

Under Rule 60(b), a court may relieve a party from a final judgment or order upon a showing of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).  The aim of Rule 60(b) is "to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'"  Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir. 1981).

As an initial matter, we reject Plaintiff's argument that the district court should have considered whether relief was warranted under Rule 60(b)(6). Plaintiff's asserted reasons for relief -- "excusable neglect" due to her lawyer's personal circumstances and her lawyer's "negligence" -- fell within the scope of Rule 60(b)(1).  And we have said that Rule 60(b)(1) and (b)(6) are "mutually exclusive" such that "a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)."  See Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., 803 F.2d 1130, 1133 (11th Cir. 1986).

5

We turn then to whether Plaintiff established grounds for relief under Rule 60(b)(1).  In deciding a case involving the construction of bankruptcy rules, the Supreme Court wrote these words: "Excusable neglect" within the meaning of Rule 60(b)(1) "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394 (1993) (deciding a case interpreting Fed. R. Bankr. P. 9006(b)(1)).  Whether a party's non-compliance with a deadline constitutes "excusable neglect" is an equitable decision turning on "all relevant circumstances surrounding the party's omission." Id. at 395.  The factors pertinent to this determination include these elements: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.

Our court then extended Pioneer's bankruptcy-rule decision to Rule 60 cases; our precedents say a court abuses its discretion when the court fails to consider, at least, each of the factors announced in Pioneer when ruling on a Rule 60(b) motion.  See Conn. State Dental Ass'n, 591 F.3d at 1356; Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996).

6

Here, the district court's order recognized the existence of the Pioneer standard. Even so, in explaining its finding of inexcusable neglect, the district court in the order wrote exclusively on the reason for the delayed proceedings: T's personal state of affairs and T's failures. Put differently -- before the district court decided the neglect in this case was inexcusable -- the court seemed to consider only the circumstances of the cause and culpability of T's failure to comply with the pertinent deadline itself.[*]

To us, it is unclear that the district court made findings about or definitely considered the other pertinent Pioneer factors -- including the consequences of T's failure. Our precedents say that, of the factors identified in Pioneer, the Supreme Court "accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration." See Cheney, 71 F.3d

---

[*] After the district court had already declared that the neglect in this case was inexcusable, the district court order, in a later paragraph, said "The relevant conduct for Plaintiff's Rule 60(b) motion is the neglect before the dismissal Order. . . ." The court's next sentence in the later paragraph read this way: "Considering all of the relevant circumstances, Plaintiff has not shown that her attorney's neglect in meeting the Court's deadlines is excusable."

In the context of the total order, the phrase "considering all of the relevant circumstances," does not reliably signal to us that the district court -- before making up its mind about "excusable" or "inexcusable" -- considered each of the Pioneer factors: including not just the factors touching on litigation performance, but those factors dealing with consequences of the neglectful delay. We do not question the judge's veracity, but remain uncertain about the intended range of things covered by the word "all" in terms of the relevant factors bearing on what is excusable. We do not decide today that each of the Pioneer factors must be distinctly examined on the face of a Rule 60 order. But the order, taken as a whole, must leave us with the definite impression that every factor was considered and everything weighed before the district court decided neglect was or was not excusable.

7

at 850.  Here, the district court, as far as we can tell, made no determination about prejudice from delay or about judicial efficiency.  (Incidentally, the Department never seems to have argued that it suffered undue prejudice from T's delay.)

On this record and given the structure and words of the district court's order, we conclude that the district court erred in failing to show that the district court considered each of the pertinent Pioneer factors and weighed everything before making the determination about excusable neglect.  See Conn. State Dental Ass'n, 591 F.3d at 1356; Cheney, 71 F.3d at 850.  Given the limited record before us on appeal -- and the discretion afforded the district court in making equitable determinations about excusable neglect -- we vacate the denial of Plaintiff's Rule 60(b) motion and remand to the district court for further consideration in the light of this opinion.  See Advanced Estimating Sys. v. Riney, 77 F.3d 1322, 1325 (11th Cir. 1996) (remanding for the district court to decide excusable neglect under the correct legal standard).

Although we vacate the district court's order and remand the case, we do not today hint that the district court necessarily reached the incorrect result.  For now, the correct result remains an open question.

VACATED AND REMANDED.

8